Maxfield v. Bierbauer et al.

GEORGE MAXFIELD, Appellant, *vs.* WILLIAM BIERBAUER *et al.* Respondents.

APPEAL FROM THE DISTRICT COURT OF BLUE EARTH COUNTY.

In an action by a vendor against the vendee, in the undisturbed possession of real estate, to enforce the specific performance of the contract for the sale thereof without covenants of warranty, or to recover the price agreed to be paid, the vendee will not be allowed to retain the purchase money on the ground merely that the vendor had previously quitclaimed his interest in the property to another, where there are no proofs nor allegations of fraud or misrepresentation with regard to the vendor's title, and the fact of such prior conveyance was known to the vendee at the time of the purchase.

Where a person claiming to be an occupant of lots in a town, and to be entitled to deeds therefor, under the provisions of the Act of Congress known as the " Town Site Law," contracts for an agreed sum to sell or transfer his possession, interest and claim to another without warranty, and, in pursuance of said contract, puts his vendee in possession, it is no defence to an action brought to recover the purchase money, that the vendor had not such an occupancy or right to the lots as would have entitled him to a deed therefor under said Act of Congress.

If a jury in such a case, to whom the issues of fact are submitted, find that such contract was made—that the vendee entered into possession of the property under it, and that such *possession* was the consideration for the purchase money, the surrendering or yielding such possession to the vendee will be considered as a full performance, on the part of the vendor, of his part of the contract

Where the record is silent on the subject, the facts, as found by the jury, will be considered as covering all matters submitted to them.

## Points and Authorities of Appellant.

Courts of Equity are not abridged by the Statute of Frauds in compelling the specific performance of agreements in case of part performance of such agreements. *Public Statutes, p.* 457, *chap.* 49, *sec.* 10.

Though the case is of a nature capable of adequate remedy at law, if the Statute of Frauds stands in the way, in case of part performance, equity may be resorted to to obtain relief. 2 *Parsons on Contract, p.* 545, *and Note " . Y,"* and cases cited. An entire performance by either party entitles him to a compulsory performance by the other. *Willard's Equity Juris.,* 284, *cites Price vs. Nichols,* 1 *Paige,* 244.

Equity will decree specific performance of parol contracts

in case of part performance.   *Willard's Eq. Juris.*, 281-3 *and Note 6, and cases cited; Story's Eq. Juris.*, secs. 759-60, 1522; 5 *Paige's Ch. R.*, p. 240.

The Statute of Frauds was not made as a means to perpetrate frauds, but to prevent frauds being done.  *Roberts on Frauds, pages, 79, 102-3; Parsons on Contract, 515 Gregory vs. Mighall, 18 Vesey, 333.*

In this case the Plaintiff gave the Defendants the possession of the lots upon the oral contract.   The delivery of possession of land is such a part performance as will take the contract out of the operation of the Statute of Frauds.   2 *Parsons on Contract*, 551, *Notes V, W, X, and Y; Roberts on Frauds, pages* 143, 147, 148 *and* 150; *Story's Eq.*, sec. 766 *and Note; Willard's Eq. Juris.*, p. 285; *Niven vs. Belknap*, 2 *Johnson's R.*, 585.

If possession is given by the vendor to the vendee, that is such a part performance as will take the contract (if oral) out of the operation of the Statute of Frauds, and the vendor may maintain an action in equity for the specific performance and for the payment of the purchase money according to the contract.   *Harris vs. Knickerbacker*, 5 *Wendell R.*, p. 638; *Willard's Eq. Juris.*, p. 287; *Roberts on Frauds*, 143, 147, 149 *and* 150; *Wills vs. Swardly*, 3 *Vesey*, 382, *Note; Story's Eq. Juris.*, 763 *to* 766; *Price vs. Nichols*, 1 *Paige's Ch. R.*, 244; *Rhodes vs. Rhodes*, 3 *Saund Ch. R.*, 279; *Pirche vs. Curtis*, 4 *Brown's Ch. Rep.*, 329.

No tender of Deed was necessary, the Defendants having refused to perform. 2 *Com., N. Y. Rep.*, p. 60.

It is sufficient if the Plaintiff can give good title at the time of the decree.   *Willard's Eq. Juris.*, 289.   Ability to give title, when decree made, is the only thing to enquire.

Possession is *prima facie* title, and is a good consideration to support a contract.   *Vol. 2, Hilliard on Real Property*, p. 155; 2 *Minn. Rep.*, 153 ; 10 *Barbour S. C. R.*, 458.

It is not necessary that a special verdict should contain facts admitted by the pleadings.   The facts admitted by the pleadings, as well as the special findings of the jury, are proper subjects for consideration upon appeal.   4 *Selden's N. Y. R.*, p. 483; *Pub. Stat.*, p. 557, sec. 7; *Church vs. Freeman*, 16 *How. Pr. Rep.*, p. 294.

Points and Authorities of Respondents.

I.—The Plaintiff, on his own showing in the complaint it-self, is not entitled to the judgment prayed for. " He has not stated facts sufficient to constitute a cause of action," and advantage can be taken of this defect after judgment, and at any stage of the- proceeding, for the Court will never give judgment for a party who does not, in his pleadings, show himself entitled to it.  *See 2d Story Eq.*, sec. 769; 1 *Sug. on Vend.*, 436, 443; *2d Story Eq.*, sec. 776; *2d Leading Cases in Eq.*, notes, *p.* 13; *and authorities cited.*

II.—If the Court should be 'of opinion that the complaint itself is sufficient to sustain a verdict, we insist that the spe-cial verdict does not find such facts and issues in favor of the Plaintiff as entitle him to a judgment upon it ; for,

1st. " The verdict must comprehend the whole issue or is-sues submitted to the jury, otherwise there can be no judg-ment, and if one be rendered, it will be reversed." 1 *Lord Raymond*, 324; *3d Salkeld*, 372; *Graham's N. Y. Practice*, 276, *note*; *see also our Code, Section* 34, *p. of Statutes*, 561. *2d Dunlap's Practice*, 665.

The mere giving of possession was not the consideration of the agreement.

Possession of a party who had conveyed away all his inte-rest to another would not entitle him to a deed from the trustee. The occupancy that entitles to a deed is a rightful occupancy only.

The Plaintiff having conveyed to Comstock all his posses-sory rights, Comstock and not Plaintiff, as between them, was entitled to a deed.

Plaintiff had nothing to sell to Defendants, and after the pretended sale to them sought not only to deprive the De-fendants of whatever advantage they might have had by means of it, but also of the improvements they had made on the premises ; and seeks to excuse himself for doing this by alleging that he did this " to avoid loss by the Defendants' neglecting to file their claim."

Plaintiff has established no such equitable interest as he

alleges, and it is to be presumed that Comstock neglected to file, not because of any acquiescence in any allegation of mis-take, but because he supposed (as the Court afterwards de-cided,) that Defendants' rights were superior to any which Plaintiff's deed to him conferred.

The Defendants had not had the benefit of full performance by Plaintiff, and he is now barred of specific performance, if by nothing else, by his conduct before the trustee ; and, there-fore, it is not inequitable to retain the possession without pay-ing the alleged consideration, as they did not get the title from him nor with his aid, but in spite of his resistance.

WILLARD & BARNEY, Counsel for Appellant.

FINCH & PITCHER, Counsel for Respondents.

*By the Court.*—EMMETT, C. J.—This is an action on the part of a vendor, to enforce the specific performance of a con-tract for the sale of his interest in certain real estate. The lots which were the subject of the contract, are a portion of the town of Mankato, which, at the time of the alleged con-tract, were public lands belonging to the United States, but which was then settled upon and occupied as a town site, and was subsequently entered as such for the benefit of the occu-pants, under the provisions of the Act of Congress, common-ly known as the "Town Site Law." The complaint alleges that in June, 1857, prior to the entry of said town, the Plaintiff was the sole occupant and claimant, under said law, of lots 4 and 5 of block 129 in said town ; and as such, on or about the 15th of said month, he made a contract with the Defendants to sell them the lots mentioned, and his " right, title, claim, in-terest, improvements, and occupancy therein and thereto," for the sum of $600, which sum they then and there agreed to pay to him therefor, when said town should thereafter be en-tered, and they could obtain deeds for the lots from the trus-tee. That said contract was not then reduced to writing, be-cause the Plaintiff had previously, and by mistake, included said lots in a conveyance made by him to one Comstock, and he desired to have said mistake corrected, before conveying to

the Defendants. That afterwards, before any arrangement could be made with said Comstock, the Plaintiff, at the special instance and request of the Defendants, and in pursuance of the terms of said contract of sale, surrendered and delivered to them the possession and occupancy of said lots ; and they thereupon, under and by virtue of the contract, entered upon and occupied the lots, and have continued, they and their assignee, so to possess and occupy the same ever since, and have made large and valuable improvements thereon. That the Defendants afterwards conveyed said lot five to one Domburgh, who thereupon took possession of, and now holds and claims the same. That the Plaintiff has since arranged said mistake with said Comstock, who makes no claim to said lots. That said town site has since been entered by the Judge of the proper county, in trust for the benefit of the occupants. And said trustee has given the necessary notice to occupants to file their claims and proofs, in order to obtain deeds. That the Defendants have filed their claim to said lot four, and said Domburgh a claim to said lot 5 ; and that the Plaintiff, having no written agreement with Defendants, also, in order to protect himself, filed a claim for said lots. And that the Plaintiff has since demanded of the Defendants, that they pay to him the said sum of $600, and offered thereupon to withdraw his said filing ; but they refused so to pay, and now set up a claim to said lots in their own behalf, and founded solely upon their occupancy and improvements, since the time they were put into possession by the Plaintiff.

The Defendants, for answer, deny the contract alleged, and all and singular the allegations concerning the Plaintiff's occupancy and possession, averring that the lots were wholly vacant and unoccupied. They deny having ever entered upon or in any manner claimed said lot five, but they admit that they entered upon, occupied, improved and claimed said lot four, and they deny that such entry was in pursuance of any contract with the Plaintiff. They admit the alleged conveyance by Plaintiff to Comstock, and aver that it was upon good consideration ; but they deny that there was any mistake in such conveyance, and they also admit that at the time of their entry upon said lots, the Plaintiff claimed that he had

a right therein, and would sell and convey to them when he arranged with said Comstock, who, he admitted, had the title ; but they deny that the Plaintiff ever obtained any right from Comstock, and aver that "Comstock gave up his right, if any he had to them."

They further deny that Plaintiff ever offered to withdraw his filing on payment of $600 ; but do not deny the allegation of a demand and refusal. They allege that he offered to give up his claim for $200, but they aver that he did not refer to any previous agreement.

The reply reiterates the allegations of the complaint, and admits that the Plaintiff offered to withdraw his filings for $200, but avers that the offer was made solely with a view to a compromise.

By some means not disclosed by the record, this case, which is peculiarly a case for the Court, was submitted to a jury for trial in the Court below, and they returned the following special findings, which, in the absence of all reference to the matter in the record, we will presume, embraces all such questions as were submitted to them, to wit :

"We find that an oral agreement was made between the parties to this action, by which the Defendants were to pay to the Plaintiff the sum of $600, for Plaintiff's right, title, interest and occupancy, improvements, possession and right of possession to lots 4 and 5 in block 129 in the town of Mankato, according to the survey and plat of S. P. Folsom, in 1852.

"We find further that under and by virtue of said agreement, the Defendants entered upon said lots, and took possession of the same, and that said possession was the consideration of said agreement.

"And we further find that before said oral agreement was made between the parties to this action, the Plaintiff quitclaimed his right and title to said lots 4 and 5 to one Comstock."

Upon the return of this verdict the Defendants moved for a new trial, on the ground that the evidence was insufficient to justify the verdict ; and also for alleged errors in law occurring at the trial. The motion was granted by the Court ; and

from the order entered therein, allowing a new trial, the Plaintiff took an appeal to this Court, where said order was reversed, and the Court below directed to proceed to judgment.

Afterwards the Plaintiff moved for judgment in accordance with the decision referred to, and the motion being resisted, the Court below refused to render a judgment for the Plaintiff, and entered an order overruling said motion ; whereupon the Plaintiff again brought an appeal.

We forbear to comment upon the many singular features which this record exhibits, preferring rather to address ourselves at once to the consideration of what we consider the real merits of the controversy between the parties, regardless of questions which might arise out of the particular practice adopted in the trial and proceedings in this case. It is proper to say, however, that we do not desire to be considered as indorsing the correctness of the course pursued.

The most important issues of fact between the parties, were as to the making of the contract declared on ; and as to whether the Defendants came into the possession of the lots by virtue, or in pursuance of such contract. All the material facts involved in both these issues are found in favor of the Plaintiff; and the question which is presented is, whether upon the facts found, and those admitted by the pleadings, the Plaintiff is entitled, as matter of law, to any judgment in his favor.

It is clearly established by the verdict that the Plaintiff agreed to yield to the Defendants possession of the lots mentioned, and transfer to them whatever interest he, as an occupant or claimant under the town site law, had therein; and that the Defendants promised to pay him therefor the sum of $600. It is equally clear that the Defendants obtained possession of said property in pursuance of, and by virtue of this agreement alone. It is specially found that possession was the consideration of the Defendants' agreement and promise, and of course such must have been the main, if not indeed the sole, object of their arrangement or purchase. There is no claim that the said sum was ever paid to the Plaintiff; and there is no denial of the allegation of demand for payment.

These are the facts upon which the Plaintiff relies for judg-

ment, as they appear from the verdict, and the admissions of the pleadings. There are other facts put in issue, but in our opinion they are either immaterial, or are subordinate to, or involved in those upon which the jury passed.

The allegations concerning the Plaintiff's occupancy and possession at and prior to the making of the contract, though put in issue by the answer, may be considered as mere matters of inducement, and descriptive of the character of Plaintiff's interest; but cannot be deemed essentially material, in view of the fact that he did not pretend to warrant his title. It may be observed with reference to this matter, however, that the inference is clear from the finding of the jury that the Plaintiff put the Defendants in possession of the premises, which he could not well have done, unless he were himself in possession as he alleges.

The Defendants, however, seek to avoid payment, or to retain the purchase money, because the jury found the further fact, that the Plaintiff had previously quit claimed his interest in the lots to Comstock; a fact not put in issue, but admitted by the pleadings. In other words, they, as purchasers in possession, want to rescind the contract and withhold the purchase money, because of an alleged want of title on the part of their vendor.

In considering whether this can be done in this particular case, it must be borne in mind that there is no just ground for claiming that any false or fraudulent representations were made by the Plaintiff, either as to the nature of his title, or the value of his interest. The Defendants make no allegation to that effect, but admit and state in their pleading, that when they entered on the premises (which the jury find was in pursuance of their contract with the Plaintiff,) the Plaintiff claimed that he had a right therein, but that the title was in Comstock, and said that he would arrange with Comstock and then sell to them. They could not therefore have been deceived or misled in regard to the conveyance or quit claim to Comstock.

It is further to be remembered in this connection that the Plaintiff did not by the terms of his contract, agree to warrant anything concerning his title or interest; nor do the De-

fendants appear to have been ignorant of any material fact or circumstance connected therewith.    They seemed willing either to run the risk of Comstock's title, or depended upon the ability of the Plaintiff to arrange with him.    And so far from Comstock ever asserting a claim adverse to them, they admit that "he gave up to them, without any consideration, so far as appears, whatever of title he had in the premises.    They really obtained from the Plaintiff all that they bargained for, and have remained, they and their assignee, in the possession of the lots, undisturbed by any claim of Comstock ever since.

It is a well settled doctrine, that a purchaser of real estate will not be allowed to retain or withhold any portion of the purchase money, in the absence of fraud and misrepresentation, where there are no covenants of warranty.    *Rawle on Cov. of Title,* 604, 606, 629, 637, 644.    In the absence of covenants the presumption is, that the purchaser takes the risk upon himself.    And where the necessary covenant does exist, and a defect of title, which was known to the purchaser, he is presumed to have taken the covenant for the express purpose of protecting himself against such defect, and cannot therefore detain the purchase money, until after the covenant has been broken.    *Id.* 725-6.    He is bound to perform his engagements while his knowledge and the state of facts continue to be the same as they were at the time of the conveyance.    3 *Penn. R.,* 447.    It is also essential to a right of action for a breach of a covenant of warranty of title; and equally so to a right to withhold or retain the purchase money, that there should be an eviction, either actual or constructive.    *Rawle on Cov. of Title,* 638-9-40, 645, 652, 655, 672.    And even when a purchaser in such case has been obliged to purchase in the paramount title, he is limited in his redress to the cost of extinguishing such title.    *Id.* 100, 101, 158, 282.    And it has also been held that mere absence of title on the part of the vendor, will not of itself constitute a valid defence to the payment of securities given for the purchase money.    *Id.* 654.    We may also refer to the further well established doctrine—that a purchaser of real estate in possession cannot retain the price after a failure of title, be-

cause the failure would go to a part only of the consideration. *Id.* 640, 644-5, *note* 1, 652.

In view of these principles we do not. see how the purchasers in the case at bar, could be allowed to retain or withhold the purchase money, for there is not only an entire absence of all covenants on the part of the vendor, but the alleged defect was known to them at the time of their purchase. They have not been, evicted or in any manner disturbed by what they claim to be the paramount title, nor has it cost them anything to extinguish it, and they are in the undisturbed possession and enjoyment of their purchase. We are unwilling to dispose of this case, however, without alluding more particularly to another of the points on which the Defendants seem to place great reliance. They insist. that there is a fatal deficiency in the verdict in that it does not find that the Plaintiff performed, or was able and willing to perform his part of the contract; and they also argue that the defect can in no way be remedied, because, as they insist, the allegations of the complaint itself show a want of ability in the Plaintiff to perform on his part; he having by his own showing previously deprived himself of all title by the deed to Comstock.

Let us inquire more particularly what constituted performance on the part of the Plaintiff. The jury have found that the *possession* which the Defendants obtained under the contract, was the consideration of their promise to pay the $600; and if so, why may not the Plaintiff be said fully to have performed on his part when he yielded possession according to the terms of the contract? But the Defendants insist that by a fair interpretation of the verdict, the right of possession was included in the consideration, and that the Plaintiff did not then have such right of possession, nor has he since acquired it.

If the Plaintiff contracted to do anything more than yield the possession of the lots, it was either to transfer, without warranty, such title only as he then had, or such as that title would be, after being relieved from the effects of his prior deed to Comstock. But take it which way you will,

it is not perceived why a quit claim deed of his interest to the Defendants now, would not convey all the title or interest he was to have conveyed by the terms of his contract, in view of the fact that the Defendants themselves allege and admit that the lots are relieved from Comstock's title; and the further fact that Plaintiff does not appear since to have done any thing to affect the title he then had. Nor is it alleged that he has not the same title now, which he had at that time. Such a deed would convey to the Defendants the *Plaintiff's* right of possession, such as it was, at the time, which is all that the jury find, according to the most latitudinous interpretation.

The same effect, under the particular circumstances of this case, would result, from the Plaintiff's withdrawing his filing, with the trustee of the town site, of a claim to these lots ; and would also have resulted from his neglecting to file at all ; for by the terms of the law prescribing rules and regulations for the execution of such trusts (*Com. Statutes*, 385, *sec.* 4,) a failure so to file within sixty days would forever bar the Plaintiff from claiming or receiving any interest or estate in the premises ; and a withdrawal at this time, as he proposes and offers to do, would be equivalent to never filing at all.

We are unable to see therefore why the Plaintiff could not comply with his agreement, even supposing he has not already done so by surrendering the possession to the Defendants ; nor why the three requisites insisted on by the Defendants' counsel, and which they admit would warrant the Court in rendering judgment for the Plaintiff; to wit, 1, That the contract declared on was made. 2, That the Defendants took possession under it. And 3, That the Plaintiff has fully performed, or is able and willing to perform, do not fully appear ; for even if yielding possession was not a full performance, which we fully believe, it will hardly be thought necessary for the jury to find that the Plaintiff could make a quit claim deed of his interest in the lots to the Defendant.

The principal reason given by the Judge below in the opinion on file, for refusing to render judgment on the verdict, was that the promise of the Defendants was without consideration and void, because of the prior quit claim deed from the Plain-

tiff to Comstock. He must have entirely overlooked or entirely disregarded the fact, found by the jury, that the *possession* which was given to the Defendants was the consideration for their promise. This finding is a complete answer to the objection of a want of consideration, although, as we have endeavored to show, it would not have followed, in any event, from a prior conveyance alone, that the purchaser could retain the purchase money unless there had been covenants of warranty and an eviction by paramount title. Nor does it by any means necessarily follow, as the judge below seemed to think, that the prior quit claim to Comstock was of the same interest which the Plaintiff agreed to transfer to the Defendants; although we have treated the question as though such might be the fact. It is not shown what interest the Plaintiff had at the time of this conveyance to Comstock, nor would he be estopped by such a deed from subsequently acquiring and setting up an interest therein adverse to that of Comstock. It is quite clear, also, that he was in possession at the time of the contract with the Defendants, but whether he acquired such possession after making the quit claim to Comstock, does not appear. Certain it is, however, that it was adverse to the alleged claim of Comstock; and that the Defendants were willing to, and did purchase his interest, whatever it was or might prove to be, at their own risk; and as they have obtained all that they bargained for, and all in fact that it was necessary for them to have, in order to enable them to become the actual occupants of the property, it is not unreasonable that they should be made to pay the price agreed upon; especially as they have ever since enjoyed the fruits of their purchase without molestation. Their subsequently claiming the lots as occupants, by virtue of their own immediate possession and improvements, is not necessarily inconsistent with their purchase of the Plaintiff's right; for if, as they allege, the lots were unimproved and actually vacant, or if they were unwilling to risk their claim upon the occupancy and improvements of the Plaintiff, then their subsequent occupancy and improvements in the one case would, and in the other might be, very essential to the making good their claim to the property as occupants under the town site law. The attempt,

however, to ignore their contract with the Plaintiff, was evidently an after thought, adopted in the hope of avoiding their promise to pay the consideration money; for which alone the Plaintiff was induced to forego his possession or occupancy, and without which, it is fair to presume, they would not have been in a position, without opposition, to occupy and improve the property in such manner as to authorize their claiming it in their own right, or by virtue of their own occupancy and improvements.

Such agreements as this are of every day occurrence in regard to lands claimed as a town site. And it is clearly to the interest of all concerned, that they should be upheld. A person desirous of obtaining or perfecting such a claim to particular lots as will result in his acquiring the title from the trustee in whose name the town may be entered, finds them already in the actual occupancy of, or claimed by another, who will resist his obtaining possession, and oppose his acquiring the title. In order, therefore, to avoid a difficulty or litigation, he agrees with such occupant or such claimant to purchase, for a specified sum, his claim or his interest, or to permit him to become the occupant instead of the other. Nothing is more common, and in our opinion no course is more prudent or desirable for a peaceably disposed person. And why should not such contract be binding, even although the person claiming may not have such possession or occupancy at the time as would constitute him an occupant within the meaning of the law, so as to entitle him to a deed from the trustee when the town shall be entered? *Non constat* but that he will perfect such right if not interfered with. And it would be the grossest injustice to a party, if, after being induced not to assert his right, or to abandon it, under a promise of payment of a sum of money, such promise cannot be enforced. Indeed it is our belief that arrangements like this tend very much to encourage not only the settlement of town sites, but also the settlement of claim contests without action, a result always to be desired; but if it should be held that such arrangement is valid only so far as the party selling or yielding his right or claim had a legal and valid right as an occupant to the property he claimed, then the tendency

would be directly the reverse; as claimants or occupants would have but little encouragement to dispose of any portion of their claim until after their title is complete; and when two or more are claiming adversely, the contest is very likely to proceed so long as they cannot make a contract of settlement equally binding in any event on each.

We regard the contract in this case as binding on both parties, whether the interest which the Plaintiff yielded to the Defendants was such as would have entitled him to the lots or not; and we hold that, by a fair interpretation of the verdict, the contract was fully performed on the part of the Plaintiff, by his giving up the possession to the Defendants. We also hold, in view of the admissions made by the pleadings, as hereinbefore referred to, that the facts found by the jury are all that are essential to the determination of every material issue joined between the parties, and fully entitle the Plaintiff to the relief demanded in the complaint; as they substantially find every such issue in his favor.

This, therefore, leaves no issues for the Judge to pass upon, (which it would have been his duty to do had there been material issues of fact not submitted to the jury;) and this disposes of the objection that the jury did not pass upon all the issues. All that remains, then, is for the Court to render such judgment as the finding or verdict warrants, which we have above intimated is the relief demanded in the complaint. We are unable, however, to enter the proper judgment or decree in this court, because this is an appeal from an order merely. We can only reverse the order appealed from, and direct the Court below to proceed to enter the judgment demanded in the Plaintiff's complaint.